1   LAWOFFICES OF MICHAEL V. CIBELLA, LLC
        Michael V. Cibella (MC-8658)
2   546 Fifth Avenue
    New York, New York 10036
3   Telephone: (212) 818-1880
    Facsimile: (212) 750-8297
4   E-Mail: mvc@cibellalaw.com

5   Attorneys for Defendant
    REGUS MANAGEMENT GROUP, LLC
6

7

8               UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF NEW YORK

10

11                                      )  Case No. _____
    ALBERT WILLIAMS,                    )
12                                      )  **NOTICE OF REMOVAL OF CIVIL
            Plaintiff,                  )  ACTION TO UNITED STATES
13                                      )  DISTRICT COURT**
                                        )
14      vs.                             )  **[28 U.S.C. §§ 1332, 1441(b), 1446(a)]**
                                        )
15                                      )
                                        )
16  REGUS MANAGEMENT GROUP, LLC,        )
                                        )
17          Defendant.                  )
                                        )
18  _____ )

19

20

21      TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR

22  THE SOUTHERN DISTRICT OF NEW YORK, AND TO ALL PARTIES AND THEIR

    ATTORNEYS OF RECORD:
23

24      Defendant Regus Management Group LLC, ("Regus" or "Defendant") hereby provides

25  notice pursuant to 28 U.S.C. §§ 1441, 1446(a) and 1332 of removal of an action filed against it in

26  the Supreme Court of the State of New York, County of New York ("Supreme Court"), under

    Index No. 114258/2010, to the United States District Court for the Southern District of New York.
27

28      The following is a short and plain statement of the grounds for removal and a listing of

    pleadings to date:

                                        1       NOTICE OF REMOVAL OF CIVIL ACTION
                                                TO UNITED STATES DISTRICT COURT [28
                                                U.S.C. SECTIONS 1332, 1441(b), 1446(a)]
    298770.1

## I. **Preliminary Matters**

1.    On or about October 29, 2010, Plaintiff Albert Williams filed a Complaint on behalf of himself ("Plaintiff") against Regus Management Group, LLC, in the Supreme Court for the State of New York, New York County. Attached hereto as Exhibit A is a true and correct copy of the Complaint.

2.    The Summons and Complaint were purportedly served on Regus, via the New York Secretary of State, on November 1, 2010. Attached hereto as Exhibit B is a true and correct copy of the Summons served in this action.

3.    On November 22, 2010, Regus timely served its Verified Answer, including Affirmative Defenses, upon Plaintiff. Attached hereto as Exhibit C is a true and correct copy of the Verified Answer with Affidavit of Service.

4.    As of this date, there are no further pleadings in the Supreme Court file. The documents attached hereto as Exhibits constitute all process, pleadings, and orders received or served by Regus in the Supreme Court action.

5.    This Notice of Removal is being filed within thirty (30) days of service of the Complaint on Regus. Thus, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

## II. **Nature of the Case**

6.    This action is based on Plaintiff's allegations that while he was employed by Defendant Regus and residing in the State of New York, Regus discriminated against Plaintiff based upon his race and retaliated against Plaintiff when Plaintiff allegedly complained of the racial discrimination, both in violation of Chapter I, Title 8, § 8-107(1)(a) of the Administrative Code of the City of New York.

7.    As a result, Plaintiff herein seeks a total of Sixteen Million ($16,000,000.00) Dollars in damages, plus costs, interest and attorneys' fees.

## III. **Diversity Jurisdiction**

8.    This Court has original jurisdiction over this case because diversity jurisdiction exists under 28 U.S.C. Section 1332(a), in that it is a civil action where the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different

298770.1

1  states.

2  **A.    Citizens of Different States**

3       9.    Upon information and belief, Plaintiff was at all relevant times, and still is, a citizen
4  of the State of New York.

5       10.    At the time the Complaint was filed, and at all times since, Defendant Regus
6  Management Group, LLC has been a Limited Liability Company organized and registered under
7  the laws of the State of Delaware, with its home office and principle place of business located in
8  the State of Texas. *See Affidavit of Sharon Edmondson ("Edmondson Aff."), ¶ 2, attached hereto.*

9       11.    The administrative and executive functions of Regus are performed in Texas, where
10 the Board of Directors meets and the majority of business records are maintained. Moreover,
11 Regus files and pays corporate income taxes in Texas. Indeed, in practical terms, the day-to-day
12 control of the company is exercised in Texas. *See Edmondson Aff., ¶ 3, attached hereto.*

13      12.    Regus provides management services and employees to business centers in 207
14 different cities and 38 different states. No single state contains a substantial predominance of the
15 corporation's business activities. Rather, the majority of Regus' business activity takes place in
16 more than one state. *See Edmondson Aff., ¶ 4, attached hereto.*

17      13.    No member of Defendant resides in or is a citizen of New York State. *See*
18 *Edmondson Aff., ¶ 5, attached hereto.*

19      14.    For the purposes of diversity jurisdiction Regus is a citizen and corporate resident of
20 the States of Texas and/or Delaware, but not New York. *See Edmondson Aff., ¶ 6, attached hereto.*

21 **B.    Amount in Controversy**

22      15.    Furthermore, the matter in controversy exceeds the sum of $75,000, exclusive of
23 interest and costs in that Plaintiff's alleged damages in the Complaint are Sixteen Million
24 ($16,000,000.00) Dollars plus attorneys' fees, exclusive of costs and interest.

25                              **IV.  Conclusion**

26      16.    Removal of this action is proper under 28 U.S.C. Section 1332, because it is a civil
27 action brought in a state court, and the federal district courts have original jurisdiction over the
28 subject matter under 28 U.S.C. Section 1332(a) because the matter in controversy (1) exceeds the

                                    3

298770.1

1   sum of $75,000.00, exclusive of interest and costs, to wit, $16,000,000.00, and (2) is between

2   citizens of different states, namely, New York and Texas.

3        17.    Should Plaintiff file a motion to remand this case, Regus respectfully requests an

4   opportunity to respond more fully in writing.

5

6        WHEREFORE, Defendant removes the original action brought by Plaintiff, now pending in

7   the Supreme Court of the State of New York, County of New York, from that State Court to this

8   Court, to wit, United States District Court for the Southern District of New York.

9   Dated: December 1, 2010
10          New York, New York

11                            LAW OFFICES OF MICHAEL V. CIBELLA, LLC

12

13

14                                By: _____

                                      Michael V. Cibella (MC-8658)

15                            Attorneys for Defendant
16                            REGUS MANAGEMENT GROUP, LLC

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION
TO UNITED STATES DISTRICT COURT [28
U.S.C. SECTIONS 1332, 1441(b), 1446(a)]

298770.1

1 | LAWOFFICES OF MICHAEL V. CIBELLA, LLC
    Michael V. Cibella (MC-8658)
2 | 546 Fifth Avenue
New York, New York 10036
3 | Telephone: (212) 818-1880
Facsimile: (212) 750-8297
4 | E-Mail: mvc@cibellalaw.com

5 | Attorneys for Defendant
REGUS MANAGEMENT GROUP, LLC

6

7

8 | **UNITED STATES DISTRICT COURT**

9 | **SOUTHERN DISTRICT OF NEW YORK**

10

11 | ALBERT WILLIAMS,    )   Case No. _____

12 |     )
        Plaintiff,  )   **DECLARATION OF SHARON**
13 |     )   **EDMONDSON IN SUPPORT OF**
    )   **NOTICE OF REMOVAL OF CIVIL**
    )   **ACTION TO UNITED STATES**
14 |     vs.    )   **DISTRICT COURT**

15 |     )   **[28 U.S.C. SECTIONS 1332, 1441(b),**
    )   **1446(a)]**
16 | REGUS MANAGEMENT GROUP, LLC, )

17 |         Defendant.  )

18

19

20

21

22

23

24

25

26

27

28

DECL. OF SHARON EDMONDSON RE:
NOTICE OF REMOVAL

1 | STATE OF TEXAS              )
  |                              ) ss:
2 | COUNTY OF DALLAS____ )

3

4 | <u>AFFIDAVIT OF SHARON EDMONDSON</u>

5

6 | I, SHARON EDMONDSON, declare as follows:

7 | 1.      I am the Vice President, Global Human Resources for the Regus Group, which

8 | Defendant at Regus Management Group, LLC, ("Regus") is a part of, and I have held this position

9 | since 2008. I have personal knowledge of the facts set forth in this Affidavit and, if called as a

10 | witness, could and would testify to such facts under oath. I make this Affidavit in support of

11 | Regus' Notice of Removal Based on Diversity Jurisdiction.

12 | 2.      Regus is a Limited Liability Company organized and registered under the laws of

13 | the State of Delaware, with its home office and principle place of business located in the State of

14 | Texas.

15 | 3.      The administrative and executive functions of Regus are performed in Texas. The

16 | Board of Directors meets in Addison, Texas. The majority of business records are maintained in

17 | Texas, and Regus files and pays corporate income taxes in Texas. In practical terms, the day-to-

18 | day control of the company is exercised in Texas.

19 | 4.      Regus provides management services and employees to business centers in 207

20 | different cities and 38 different states. No single state contains a substantial predominance of the

21 | corporation's business activities. Rather, the majority of Regus' business activity takes place in

22 | more than one state.

23 | 5.      No member of Regus resides in or is a citizen of New York State.

24 | 6.      For the purposes of diversity jurisdiction Regus is a citizen and corporate resident of

25 | the States of Texas and/or Delaware, but not New York.

26

27

28

DECL. OF SHARONEDMONDSON RE:
                                         NOTICE OF REMOVAL

1        I declare under penalty of perjury under the laws of the State of Texas that the foregoing is

2  true and correct.

3        Executed this ____ day of _____ 2010, at Dallas, Texas.

4

5

6                                      SHARON EDMONDSON

7

8  Sworn to before me this _30rd_
   day of _November_ , 2010

9

10  Notary Public

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                3          DECL. OF SHARON EDMONDSON RE:
                                           NOTICE OF REMOVAL

**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
ALBERT WILLIAMS,                                    Index No:

          *Plaintiff,*

                                                    **VERIFIED COMPLAINT**

     -against-

REGUS MANAGEMENT GROUP, LLC,                        FILED    16114258

          *Defendant.*
-------------------------------------------------------------------X

          Plaintiff, Albert Williams, as and for his Verified Complaint, respectfully alleges all upon

information and belief, as follows:

                              **IDENTITY OF PARTIES**

          1.     At all times referred to herein, Plaintiff, Albert Williams ("Williams"), an African-

American male, was employed by Defendant, Regus Management Group, LLC ("Regus"), a limited

liability company, licensed to do business in the State of New York, until his unlawful termination

on August 30, 2010.


          2.     Regus is a corporation that provides temporary offices, meeting rooms, and virtual

offices to businesses worldwide, with numerous locations internationally, including offices in the

County, City, and State of New York, where Williams, at all relevant times referred to herein,

performed his services.


                    **BACKGROUND RELEVANT TO ALL CAUSES OF ACTION**

          3.     Having had prior terms of employment with Regus since 1998, Williams commenced

his employment with Regus on October 30, 2005, in its Information Technology ("IT") department,

as its Director of Information Technology Operations for North America, Canada and South America.

4.     Williams was qualified for his position, as confirmed, among other things, his over twelve years of professional IT experience, and his education as well as the fact that he held the position for which he was hired for nearly five years, and also received several bonuses and merit based raises during his employment at Regus.

5.     In 2009, Chris Hadfield ("Hadfield"), a Caucasian, who held the position of Director of Sourcing and who had no experience in IT, was selected by Regus to assume the role of Head of IT, and became Williams' direct supervisor.

6.     Prior to reporting to Hadfield, Williams reported to Jason Schwendinger, a Caucasian who was the Senior Director of IT, and they had a positive working relationship.

7.     Beginning in late 2009, and continuing into 2010, soon after Williams began reporting to Hadfield, Williams observed that Regus permitted, ratified and condoned a discriminatory and hostile work environment, discriminatory standards and discriminatory policies to exist in its workplace that resulted in discriminatory conduct perpetrated against African-American employees because of their race, including but not limited to Williams, as evidenced by at least the following examples:

2

- Hadfield, Williams' supervisor for the last year, was unwilling to respond to many e-mails, from Williams, which denied Williams an equal opportunity to exchange essential information, and unnecessarily placed obstacles in Williams path, all of which would not have occurred if Williams were not an African-American;

- Williams was excluded from numerous significant, upcoming projects, which directly related to his duties at Regus and was intended to obstruct Williams from performing his duties, which would not have been the case if Williams were a Caucasian;

- Hadfield, because Williams was an African-American, failed to effectively communicate with Williams as he should have and, thereby, denied Williams an opportunity to fully interact with his direct supervisor on key issues directly relating to Williams' duties, and was also intended to prevent Williams from performing his duties, which would not have occurred if Williams were not an African-American;

- Hadfield, because Williams was an African-American, refused to meet with Williams since the start of 2010, which was intended to prevent Williams from receiving information he required and to force Williams from his position.

- Regus, because Williams is an African-American, failed to permit Williams to advance to positions for which he was qualified, and instead, filled those positions with less experienced Caucasian individuals, thereby effectively placing a "glass ceiling" in the path of its African-American employees, including Williams, which would not have occurred if Williams had been a Caucasian employee;

- Williams was excluded from the decision to terminate his Senior Network Engineer, Ken Munson ("Munson"), a key employee who reported to Williams and whose services were valuable to the IT Department, and Williams was notified only 24 hours before the termination was to occur, thereby, embarrassing and humiliating Williams, which would not have occurred if Williams were Caucasian;

3

The incidents set forth above are not all inclusive, but instead are only examples of the reprehensible, degrading, and discriminatory conduct perpetrated by Regus that took place during Williams' employment because is an African-American.

8.     In fact, Regus has maintained a workplace that favors Caucasian employees and discriminates against African-Americans, such as Williams, as is exemplified, among other things, by the composition of Regus' Global Senior Management, which is comprised almost entirely of Caucasian individuals so that, among other things:

- The Board of Directors is comprised of entirely Caucasian individuals;

- The Executive Leadership is comprised of almost entirely Caucasian employees (6 out of 7);

- The U.S. Vice Presidents are comprised almost entirely of Caucasian employees (17 out of 18); and

- Only 5 out of approximately 75 Directors of Regus are African-American.

9.     Within the Regus corporate organization, Williams, at the time of his unlawful termination, was one of only two senior level African-American employees out of approximately several hundred.

10.    Of these two African-American senior level employees, Williams was the only African-American Director at the national level.

4

11.     In September 2009, upon information and belief, an African-American call center employee complained to the Chief Executive Officer of the Americas, Guillermo Rotman ("Rotman"), about being the subject of racial slurs which by Regus employees, including senior leadership from the United Kingdom who were being trained in the United States, referring to her as, **"nigger," "coon," "a cancer to the organization"** and **"bitch."**

12.     When this employee complained regarding this discriminatory conduct, Rotman, upon information and belief, told the employee to, **"take it on the chin,"** confirming that Regus tolerates and condones discrimination against African-American employees.

13.     On February 25, 2010, Williams expressed his concerns by letter to Regus' Chief Executive Officer of the Americas, Guillermo Rotman, regarding the discriminatory conduct to which Williams was being subjected because of Williams' race.

14.     Rotman, after receiving Williams' complaints of discrimination, criticized and belittled Williams claims.

15.     As a result of the increased and intensified hostility, Williams retained an attorney, who, by letter dated March 1, 2010, contacted Regus regarding the issues that existed in Williams' workplace.

16.    Williams' complaints to Rotman of the discrimination and his engagement of an attorney who contacted Regus on behalf of Williams were protected activities under the law of which Regus was aware.

17.    On March 4 and, again on March 12, 2010, the Vice President of Global Human Resources, Sharon Edmondson ("Edmondson"), spoke with Williams by video conference and by telephone, at which time Williams, again, complained of discrimination as a result of his race, which was a further protected activity.

18.    After Williams complained about discrimination and made Regus aware that he protested the unlawful conduct of Regus, Regus retaliated against Williams through, among other things, at least the conduct described below, which is intended only as examples, including, but not limited to:

●    Excluding Williams from decision-making on issues concerning Williams' responsibilities, while at the same time, directly interacting with Williams' subordinate, Stan Liss ("Liss"), a Caucasian, on these significant matters, which would not have occurred had Williams not complained of Regus' discriminatory conduct, as a result of Williams' race;

●    Limiting Williams' duties so drastically that, in effect, the position held by Williams was materially altered so that it was actually not the same position he had previously held, and Regus effectively demoted Williams, which would not have occurred had Williams not complained of Regus' discriminatory conduct;

●    Failing to notify Williams that the company was outsourcing many significant job functions for which Williams was directly responsible, which would not have occurred had Williams not made complaints of discriminatory conduct;

6

- Undermining work efforts of Williams, which would not have occurred had Williams not complained of race discrimination;

- Regularly belittling Williams, both over the phone and by e-mail, which did not occur prior to Williams engaging in a protected activity by protesting Regus' racially discriminatory conduct;

- Limiting the scope of Williams' involvement in projects to little more than "busy work" with the intention of keeping Williams from being involved in substantive projects while at Regus, which would not have occurred had Williams not complained of Regus' discriminatory conduct.

The incidents set forth above are not all inclusive, but instead are only examples of the reprehensible, retaliatory conduct, perpetrated by Regus, that have taken place during Williams' employment.

19.     On May 7, 2010, Williams wrote Rotman, Regus' C.E.O., to protest the continuous discrimination and retaliation that he has faced since his first complaints of discrimination.

20.     Williams also traveled to Dallas to meet with Edmondson and Hadfield, during which meetings Williams again complained of race discrimination and retaliation.

21.     During this meeting, Edmondson and Hadfield told Williams that he was being transferred to Dallas, Texas.

22.     At the time Williams was advised that he was being transferred to Dallas, he was working from his office in New York City, where he had effectively performed for the past three years, to the total and complete satisfaction of Regus, confirmed by Rotman, Regus' C.E.O., who

informed Williams that Williams' presence in New York was beneficial to the Company because it permitted the Company to have a presence in both Washington, D.C., and New York.

23.    There was no legitimate business reason for transferring Williams to Dallas, and doing so was an effort to force Williams to leave Regus, as Regus knew that Williams' wife had just undergone surgery and needed on-going medical care and requiring Williams to leave his wife at that time, or lose the care of her physicians, made transferring not possible.

24.    Regus also knew that there was no genuine need to move Williams from his office in New York, but did so, nevertheless, because Regus knew that Williams could not accept a transfer to Dallas because of his family, which would then create a basis for Regus to terminate Williams.

25.    Williams, again, wrote to Rotman on May 28, 2010, to express his concern that the move to Dallas was a retaliatory effort to force him out of Regus, because of his complaints of discrimination and retaliation.

26.    Regus made it clear that Williams' only option was to move to Dallas, which was only told to Williams after Williams complained about discrimination and retaliation.

27.    On August 30, 2010, Edmondson traveled to New York City from Dallas, arrived at Williams' office, and then proceeded to present Williams with four significantly junior positions, and stated, ". . . since I know that you would not want any of these positions, I prepared a separation

8

agreement," with respect to Williams' termination and presented it to Williams.

28.    Williams was terminated on August 30, 2010.

29.    The irreversible damage inflicted upon Williams was a direct and proximate result of the conduct complained of herein, and has caused emotional injury and severely impacted the quality of his life because he was subjected to the unlawful conduct described herein.

30.    The circumstances surrounding the discriminatory acts and adverse employment action Williams suffered give rise to a very strong and reasonable inference of race discrimination and retaliatory conduct by Regus.

31.    As a result of Regus' discriminatory conduct, Williams has suffered the adverse effects of race discrimination and retaliation and the quality of his life has been damaged and his self-esteem, self-respect and well-being have been harmed because he was subjected to the intimidating and humiliating types of conduct described herein, for which Williams has been required to seek medical attention, all of which will continue into the future and remain a source of humiliation, anguish, and financial loss to Williams for the remainder of Williams' working life, so that the quality of Williams' life has been significantly damaged as a result of the discrimination and retaliation he endured from Regus.

9

32.    Here, the acts of Regus were done so clearly with reckless indifference in the face of a perceived risk that its actions would violate Williams' protected rights under the New York City Human Rights Law, that, in addition to all the damages inflicted upon Williams and in addition to all the measure of relief to which Williams may properly be entitled herein, Regus should also be required to pay punitive damages as punishment for its discriminatory conduct in order to deter Regus and others similarly situated from engaging in such conduct in the future.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF WILLIAMS AGAINST REGUS FOR RACE DISCRIMINATION IN VIOLATION OF CHAPTER I, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

33.    Williams repeats, re-alleges and incorporates each and every allegation contained in paragraphs 1 through 32 of this Complaint, as though fully set forth at length herein.

34.    The acts which constitute and form this cause of action were perpetrated upon Williams while he was in the course of his employment with Regus and while he was protected under the New York City Human Rights Law because of his race.

35.    Given the circumstances surrounding Regus' conduct towards Williams, including but not limited to the fact that, among other things, the manner in which Williams is treated in comparison to his non-African American co-workers, one can reasonably conclude that these circumstances give rise to an inference of race discrimination

10

36.     Regus condoned discriminatory behavior on the part of Regus' senior personnel by, among other things, failing to provide Williams with a workplace free of discrimination and refusing to take any action to prevent or remedy the discriminatory workplace that existed, all of which were adverse employment actions.

37.     The facts contained herein constitute unlawful discrimination against Williams by Regus, based on Williams' race, in violation of Chapter I, Title 8 of the Administrative Code of the City of New York, §8-107(1)(a) ("the New York City Human Rights Law"), which, *inter alia*, states that:

> It shall be unlawful discriminatory practice . . . [f]or an employer or an employee or agent thereof, because of the actual or perceived . . . race . . . of any person . . . to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment.

38.     As a direct and proximate result of Regus' violation of the New York City Human Rights Law, Regus is liable to Williams pursuant to §8-502(a) of said statute for "damages including punitive damages," and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," based on the lodestar method, as has been judicially established and accepted as a means of calculating attorney's fees, when they are properly available under the law, as they are here, and for pre-judgment interest.

39.     In addition to being adversely affected in his employment, Williams has been irreparably personally and professionally humiliated, demeaned and degraded, all of which has been

11

caused by Regus' unlawful conduct due to discrimination based on Williams' race, in violation of Williams' human rights.

40.   As a direct and proximate result of Regus' conduct complained of herein, and as alleged in this cause of action, as well as the conduct set forth in this Complaint, Williams has suffered damages, injuries and losses, both actual and prospective, which include the damage to his career and the emotional pain and suffering Williams has been caused to suffer, all of which Williams alleges to be in the amount of Three Million Dollars ($3,000,000).

41.   The acts of Regus were committed with reckless indifference, in the face of a perceived risk that its actions would violate Williams' protected rights under the New York City Human Rights Law, so that, in addition to the damages inflicted upon Williams and in addition to all the other measures of relief to which Williams may be properly entitled herein, Regus should also be required to pay punitive damages for its discriminatory conduct in the further and additional amount of Five Million Dollars ($5,000,000), in order to deter Regus and others similarly situated from engaging in such conduct in the future.

42.   Williams, therefore, seeks compensatory damages, including, among other things, for the emotional harm inflicted upon him, the sum of Three Million Dollars ($3,000,000), and the additional and further sum of Five Million Dollars ($5,000,000) for punitive damages, making a total of Eight Million Dollars ($8,000,000), plus the costs of this action, as well as reasonable attorney's fees on this first cause of action based on the lodestar method as has been judicially defined and

12

accepted under actions such as that which exists here, and for pre-judgement interest.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF WILLIAMS AGAINST REGUS FOR RETALIATION IN VIOLATION OF CHAPTER 1, TITLE 8, § 8-107(7) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

43.    Williams repeats, re-alleges and incorporates in full paragraphs 1 through 32 of this Complaint, as though fully set forth at length herein.

44.    Each time that Williams complained of discriminatory treatment based on his race that he was subjected to by Regus, he was engaged in a protected activity under the New York City Human Rights Law, of which Regus was aware.

45.    In retaliation for complaining about the hostile environment which Regus caused, permitted and allowed to exist in Williams' workplace, Regus took adverse employment action against Williams by, among other things, belitting and excluding Williams from meetings and decisions which he had been previously involved in, attempting to relocate him to Dallas, and his termination, all of which was causally connected to Williams' complaints.

46.    Williams was caused to suffer and continues to suffer from the adverse effects of his treatment by Regus because of the retaliation to which he was subjected by Regus, in violation of Williams' human rights under the law.

13

47.     The aforementioned acts of Regus constitute unlawful discriminatory retaliation against Williams in violation of Chapter 1, Title 8 of the Administrative Code of the City of New York, § 8-107(7) of the New York City Human Rights Law, which provides, *inter alia*, that:

> It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter . . . .

48.     As a direct and proximate result of Regus's violation of the New York City Human Rights Law, Regus is liable to Williams pursuant to § 8-502(a) of said statute for "damages including punitive damages," pursuant to § 8-502(f) of said statute for "costs and reasonable attorney's fees," based on the lodestar method as has been judicially established and accepted as a means of calculating attorney's fees, when they are properly available under the law, as they are here.

49.     As a direct and proximate result of Regus' conduct complained of herein, and as alleged in this cause of action, as well as the conduct set forth in this Complaint, Williams has been adversely affected in his employment and in his life's normal pursuits, and Williams believes that the injuries inflicted upon him as a direct result of the occurrences complained of herein have, and will continue to have, an irreparably devastating effect upon his well-being, for which Regus should be required to pay Williams in the amount of Three Million ($3,000,000) Dollars in compensatory damages.

14

50.    Here, the acts of Regus were so reprehensible and were done so clearly with malice and/or reckless indifference for the perceived risks that its actions would violate Williams' protected rights under the New York City Human Rights Law, that, in addition to all the damages inflicted upon Williams and in addition to all the measures of relief to which he may properly be entitled herein, Regus should also be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Five Million ($5,000,000) Dollars, in order to deter Regus and others similarly situated from engaging in such conduct in the future.

51.    Williams, therefore, seeks compensatory damages in the second cause of action, including, among other things, for the emotional harm inflicted upon him, in the sum of Three Million ($3,000,000) Dollars, and the additional and further sum of Five Million ($5,000,000) Dollars for punitive damages, making a total of Eight Million ($8,000,000) Dollars, plus the cost of this action as well as reasonable attorney's fees on this cause of action.

**WHEREFORE**, Plaintiff Albert Williams demands judgment against Regus on the First Cause of Action in the sum of Three Million ($3,000,000) Dollars in compensatory damages and the further and additional sum of Five Million ($5,000,000) Dollars in punitive damages, for a total of Eight Million ($8,000,000) Dollars, plus the costs of this action prejudgment interest and reasonable attorney's fees as permitted under the law; and on the Second Cause of Action in the sum of Three Million ($3,000,000) Dollars in compensatory damages and the further and additional sum of Five Million ($5,000,000) Dollars in punitive damages, for a total of Eight Million ($8,000,000) Dollars

15

plus the costs of this action prejudgment interest and reasonable attorney's fees as permitted under the law, so that for the First and Second Causes of Action, Plaintiff seeks a total of Sixteen Million ($16,000,000) Dollars as specifically identified above, plus the costs of this action, prejudgment interest and reasonable attorney's fees, calculated upon the lodestar method, as permitted under the law, and for such other relief as this Court deems just and proper.

**SCHWARTZ & PERRY, LLP**
*Attorneys for Plaintiff*

By: _____

MURRAY SCHWARTZ
BRIAN HELLER
STEVEN PALLONETTI
295 Madison Avenue
New York, New York 10017
(212) 889-6565

16

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
ALBERT WILLIAMS,                                                          **Index No:**

       *Plaintiff,*

    -against-                                                          **VERIFICATION**

REGUS MANAGEMENT GROUP, LLC,

       *Defendant.*
-----------------------------------------------------------------X

STATE OF NEW YORK   )
                  )ss.
COUNTY OF NEW YORK  )

      ALBERT WILLIAMS, being duly sworn, says:

      I am a Plaintiff in the within action; I have read the foregoing Complaint and know the

contents, information and belief, and as to those matters, I believe them to be true.

                                                  ALBERT WILLIAMS

Sworn to me this 27th
day of October 2010

NOTARY PUBLIC

                        Steven J. Pallonetti
                 Notary Public, State of New York
                    No. 02PA6193266
                 Qualified in Richmond County
           Commission Expires September 15, 20 /:2

17

COUNTY OF NEW YORK

ALBERT WILLIAMS,

       *Plaintiff,*

   -against-

REGUS MANAGEMENT GROUP, LLC.,

      *Defendant.*

ORIGINAL

## SUMMONS AND VERIFIED COMPLAINT

LAW OFFICES
SCHWARTZ
&PERRY
LLP

*Attorney(s) for*  **Plaintiff**
*Office and Post Office Address, Telephone*
295 Madison Avenue
New York, NY 10017
(212) 889-6565

To

*Attorney(s) for*

Signature (Rule 130-1.1-a)

Print name beneath:
**BRIAN HELLER**

Service of a copy of the within

is hereby admitted.

Dated,

*Attorney(s) for*

Sir.—Please take notice
☐ NOTICE OF ENTRY
that the within is a (*certified*) true copy of a
duly entered in the office of the clerk of the within named Court on
☐ NOTICE OF SETTLEMENT
that an order

of which the within is a true copy will be presented for
one of the judges

settlement to the HON.

Yours, etc.

SCHWARTZ
&PERRY
LLP

*Attorney(s) for*

*Office and Post Office Address, Telephone*
295 Madison Avenue
New York, NY 10017
(212) 889-6565

To

Attorney (s) for

**EXHIBIT B**

SCHWARTZ
&PERRY

Supreme Court of the State of New York
County of    NEW YORK

Index No. 1611425S
Date purchased

ALBERT WILLIAMS,

Plaintiff(s) designate(s)
NEW YORK
County as the place of trial.

The basis of the venue is
Defendant's place of business

*against*                    *Plaintiff(s)*

Summons

REGUS MANAGEMENT GROUP, LLC.

Plaintiff(s) reside(s) at

*Defendant(s)*

County of

To the above named Defendant(s)

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within   20   days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated,        October 27, 2010

Attorney(s) for Plaintiff

Office and Post Office Address

Defendant's address:

REGUS MANAGEMENT GROUP, LLC.
5 Penn Plaza, 23rd Floor
New York, New York 10001

SCHWARTZ & PERRY, LLP
295 Madison Avenue
New York, New York 10017
(212) 889-6565

FILED
OCT 2 9 2010
COUNTY CLERK'S OFFICE
NEW YORK

STATE OF NEW YORK, COUNTY OF         **AFFIDAVIT OF SERVICE**

SS:   The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides at

That on            at        M., at

deponent served the within summons,          on

**INDIVIDUAL**
1. ☐   by delivering a true copy *of each* to said defendant personally; deponent knew the person so served to be the person described as said defendant therein.       defendant,

**CORPORATION**
2. ☐   a        corporation, by delivering thereat a true copy *of each* to personally, deponent knew said corporation so served to be the corporation described in said summons as said defendant and knew said individual to be        thereof.

**SUITABLE AGE PERSON**
3. ☐   by delivering thereat a true copy *of each* to        a person of suitable age and discretion. Said premises is defendant's—actual place of business—dwelling place—usual place of abode—within the state.

**AFFIXING TO DOOR, ETC.**
4. ☐   by affixing a true copy *of each* to the door of said premises, which is defendant's —actual place of business—dwelling place— usual place of abode—within the state. Deponent was unable, with due diligence to find defendant or a person of suitable age and discretion thereat, having called there

**MAILING TO RESIDENCE USE WITH 3 OR 4**
5A. ☐   Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to defendant at defendant's last known residence, at        and deposited said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS USE WITH 4**
5B. ☐   Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly addressed to defendant at defendant's actual place of business, at        in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the defendant.

**DESCRIPTION USE WITH 1, 2, OR 3**
☐

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ Male | ☐ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

Sworn to before me on

Print name beneath signature. ......................................................

LICENSE NO. ...............................................

---

ut of the State of New York

Plaintiff(s)

against

Defendant(s)

**Summons**
CTION NOT BASED UPON A
SUMER CREDIT TRANSACTION

Attorney(s) for Plaintiff(s)

ce, Post Office Address and Tel. No.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ALBERT WILLIAMS, ------------------------------------X

**EXHIBIT C**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X
ALBERT WILLIAMS,                                    **Index No.: 114258/10**

        Plaintiff,

      vs.                                         **VERIFIED ANSWER**

REGUS MANAGEMENT GROUP, LLC,

        Defendant.

--------------------------------------------------------------------X

      Defendant, REGUS MANAGEMENT GROUP, LLC, by its attorneys, Carlton, DiSante, & Freudenberger LLP and the Law Offices of Michael V. Cibella, LLC, as and for a Verified Answer to Plaintiff's Verified Complaint ("Complaint") states as follows:

      1.  Defendant denies the allegations contained within paragraph "1" of the Complaint, except admits that Plaintiff, an African-American male, was at certain times employed by Defendant, a limited liability company licensed to do business in the State of New York, with its principal place of business in the State of Texas.

      2.  Defendant denies the allegations contained within paragraph "2" of the Complaint except admits that defendant provides temporary offices, meeting rooms and virtual offices to businesses throughout the United States, including within the State, City and County of New York.

      3.  Defendant denies the allegations contained within paragraph "3" of the Complaint, except admits that at certain times Plaintiff was employed within defendant's Information Technology ("IT") department as its Director of Information Technology Operations for North America, Canada and South America.

4. Defendant denies knowledge and information sufficient to form a belief as to the allegations contained within paragraphs "4", "9", "10", "15", "16", "17", "19", "20", "21", "22", "25" and "26" of the Complaint.

5. Defendant denies the allegations contained within paragraph "5" of the Complaint, except admits that at certain times, Chris Hadfield, a Caucasian, was the Director of Sourcing and, sometime in 2009, became Plaintiff's direct supervisor.

6. Defendant denies knowledge and information sufficient to form a belief as to the allegations contained within paragraph "6" of the Complaint, except admits that prior to reporting to Hadfield, Plaintiff reported to Jason Schwendinger, a Caucasian who was the Senior Director of IT.

7. Defendant denies all of the allegations contained within paragraphs "7" (including each unnumbered subparagraph under paragraph "7"), "11", "12", "13", "14", "18" (including each unnumbered subparagraph under paragraph "18"), "23", "24", "27", "29", "30", "31" and "32" of the Complaint.

8. Defendant denies the allegations contained within paragraph "8" of the Complaint, lines 1-4. Defendant denies knowledge and information sufficient to form a belief as to the four remaining subparagraphs included under paragraph "8", lines 5-12 of the Complaint.

9. Defendant admits the allegations contained within paragraph "28" of the Complaint.

### AS TO THE FIRST CAUSE OF ACTION

10. In response to paragraph "33," defendant repeats, reiterates and realleges each and every response in the paragraphs above, as if more fully set forth herein.

11. Defendant denies the allegations contained within paragraphs "34", "35", "36", "37", "38", "39", "40", "41" and "42" of the Complaint.

2

## AS TO THE SECOND CAUSE OF ACTION

12. In response to paragraph "43" of the Complaint, Defendant repeats, reiterates and realleges each and every response in the paragraphs above, as if more fully set forth herein.

13. Defendant denies the allegations contained within paragraph "44", "45", "46", "47", "48", "49", "50" and "51" of the Complaint.

14. In response to the unnumbered paragraph following Paragraph "51" of the Complaint, Defendant denies that Plaintiff is entitled to the relief requested.

## AFFIRMATIVE DEFENSES

Defendant has not completed its investigation of the facts of this case, has not completed discovery in this matter, and has not completed its preparation for trial. The affirmative defenses asserted herein are based on Defendant's knowledge, information and belief at this time, and Defendant specifically reserves the right to modify, amend or supplement any affirmative defense contained herein at any time. Without conceding that it bears the burden of proof or persuasion as to any one of them, Defendant alleges the following separate affirmative defenses to the Complaint:

## AND AS FOR A FIRST AFFIRMATIVE DEFENSE

15. The Complaint fails to state a claim or cause of action upon which relief may be granted against Defendant.

## AND AS FOR A SECOND AFFIRMATIVE DEFENSE

16. Plaintiff's claims are barred by the doctrine of estoppel and waiver.

## AND AS FOR A THIRD AFFIRMATIVE DEFENSE

17. The Complaint, and each purported cause of action stated therein, is barred by the applicable statutes of limitations.

## AND AS FOR A FOURTH AFFIRMATIVE DEFFENSE

18.   Plaintiff's employment was terminable at the will of either said Plaintiff or Plaintiff's employer.

## AND AS FOR A FIFTH AFFIRMATIVE DEFFENSE

19. Plaintiff is not entitled to any recovery sought in the Complaint as there is no causal connection between Plaintiff's injuries, if any, and any act or omission of Defendant.

## AND AS FOR A SIXTH AFFIRMATIVE DEFFENSE

20.   If Defendant did subject Plaintiff to any wrongful or unlawful conduct resulting in mental, physical or emotional harm, although such is not admitted hereby or herein, Plaintiff had a duty to mitigate any damages Plaintiff may have suffered by seeking medical and psychological treatment and Plaintiff has failed to do so.

## AND AS FOR A SEVENTH AFFIRMATIVE DEFFENSE

21.   Plaintiff is barred from making the claims set out in the Complaint because Plaintiff has failed to exhaust administrative remedies.

## AND AS FOR A EIGHTH AFFIRMATIVE DEFFENSE

22.   Defendant alleges that, as to any claim by Plaintiff for physical, mental or emotional distress, said claim is barred as workers' compensation is Plaintiff's exclusive remedy.

## AND AS FOR A NINTH AFFIRMATIVE DEFFENSE

23.   Plaintiff's Complaint fails to set forth any facts that would constitute the basis for an award of attorneys' fees against Defendant.

## AND AS FOR A TENTH AFFIRMATIVE DEFFENSE

24. Plaintiff is barred, in whole or in part, from asserting any cause of action against, or recovering any damages from Defendant because Defendant acted in good faith and with due care at all relevant times.

## AND AS FOR AN ELEVENTH AFFIRMATIVE DEFFENSE

25. Plaintiff's Complaint was brought in bad faith and the Complaint is frivolous; therefore, by reason of the conduct stated herein, Defendant is entitled to, and will seek, sanctions and reasonable expenses, including attorney's fees, incurred in defending this action.

## AND AS FOR A TWELFTH AFFIRMATIVE DEFFENSE

26. Plaintiff's claims are barred because all decisions made regarding Plaintiff's employment at Defendant were based on legitimate, non-discriminatory and non-retaliatory criteria, and had nothing to do with Plaintiff's race and/or engaging in a protected activity.

## AND AS FOR A THIRTEENTH AFFIRMATIVE DEFFENSE

27. At the time of the events alleged in the Complaint, Defendant had in place polices against the conduct alleged and Plaintiff failed to avail himself of the remedial measures therein.

## AND AS FOR A FOURTHEENTH AFFIRMATIVE DEFFENSE

28. Defendant is informed and believes and thereon alleges that Defendant's conduct herein was justified under the circumstances.

## AND AS FOR A FIFTEENTH AFFIRMATIVE DEFFENSE

29. Defendant alleges that at the time of the alleged events, Defendant promptly investigated and came to a resolution of the matter, thus barring Plaintiff's claim.

## AND AS FOR A SIXTEENTH AFFIRMATIVE DEFFENSE

30. Defendant alleges that any recovery to which Plaintiff might otherwise have been entitled (and Defendant denies that Plaintiff is entitled to any recovery) is reduced and/or eliminated on the basis of the after-acquired evidence doctrine.

## AND AS FOR A SEVENTEENTH AFFIRMATIVE DEFFENSE

31. Plaintiff is barred, in whole or in part, from asserting any cause of action against, or recovering any damages from, Defendant because the actions of Defendant respecting the subject matters in the alleged causes of action, and each of them, were undertaken in good faith, with the absence of malicious intent to injure Plaintiff, and constitute lawful, proper and justified means to further the purpose of engaging in and continuing legitimate business activities.

## AND AS FOR AN EIGHTEENTH AFFIRMATIVE DEFFENSE

32. Defendant is not liable for Plaintiff's alleged damages because, if any person engaged in intentional, willful, or unlawful conduct as alleged in the Complaint, he or she did so without the knowledge, authorization or ratification of Defendant.

## AND AS FOR A NINETEENTH AFFIRMATIVE DEFFENSE

33. Plaintiff's claims for monetary relief are barred, in whole or in part, on the basis of the avoidable consequences doctrine.

## AND AS FOR A TWENTIETH AFFIRMATIVE DEFFENSE

34. Plaintiff's allegations of isolated and sporadic conduct are insufficient to establish a hostile work environment for harassment purposes.

## AND AS FOR A TWENTY FIRST AFFIRMATIVE DEFFENSE

35. Defendant had no knowledge or notice of Plaintiff's alleged intolerable or aggravated working conditions.

## AND AS FOR A TWENTY SECOND AFFIRMATIVE DEFFENSE

6

36. Defendant exercised reasonable care to prevent and promptly correct harassing behavior, if any, in the workplace, and Plaintiff unreasonably failed to take advantage of preventative and/or corrective opportunities provided by Defendant, or to avoid harm otherwise.

## AND AS FOR A TWENTY THIRD AFFIRMATIVE DEFFENSE

37. Plaintiff's claims are barred, in whole or in part, by the managerial privilege

## AND AS FOR A TWENTY FOURTH AFFIRMATIVE DEFFENSE

38. Defendant alleges that the damages, if any, or loss, if any, purportedly suffered by Plaintiff, was caused, if at all, by factors unrelated to any conduct or lack thereof on the part of Defendant.

## AND AS FOR A TWENTY FIFTH AFFIRMATIVE DEFFENSE

39. Plaintiffs' prayer for exemplary damages is unconstitutional because it seeks to impose an "excessive fine."

## AND AS FOR A TWENTY SIXTH AFFIRMATIVE DEFFENSE

40. Defendant denies responsibility for any of the damages or losses alleged in the Complaint on file herein; however, if Defendant is found to be responsible (which supposition is denied and merely stated for the purpose of this affirmative defense), then Defendant provisionally alleges that Defendant's conduct is not the sole and proximate cause of the resultant damages and losses. Any damages awarded to Plaintiff must be apportioned according to the respective fault and legal responsibility of all parties, persons and entities, or their agents, servants, and employees who contributed to and/or caused said resultant damages as alleged, according to the proof presented at the time of trial. To assess any greater percentage of fault and damages against Defendant in excess of its percentage of fault would be a denial of equal protection and due process.

## <u>RESERVATION OF AFFIRMATIVE DEFENSES</u>

Defendant alleges that it presently has insufficient knowledge or insufficient information upon which to form a belief as to whether it may have additional, yet unasserted, affirmative defenses. Defendant therefore reserves the right to assert additional affirmative defenses in the event discovery indicates it would be appropriate.

**WHEREFORE**, defendant Regus Management Group, LLC demands judgment dismissing the Complaint in its entirety and such other and further relief which this Court deems just and proper.

Dated: New York, New York
       November 18, 2010

LAW OFFICES OF MICHAEL V. CIBELLA, LLC
Attorneys for Defendant
REGUS MANAGEMENT GROUP, LLC
546 Fifth Avenue
New York, New York 10036
(212) 818-1880

By: _____
        Michael V. Cibella, Esq.

Dated: New York, New York
       November 18, 2010

CARLTON DISANTE & FREUDENBERGER LLP
Attorneys for Defendant
REGUS MANAGEMENT GROUP, LLC
c/o Law Offices of Michael V. Cibella, LLC
546 Fifth Avenue, 6th Floor
New York, New York 10036
(212) 818-1880

By: _____
        Michael V. Cibella, Esq.
        *Of Counsel*

8

TO:    Murray Schwartz
       SCHWARTZ & PERRY
       Attorneys for Plaintiff
       295 Madison Ave.
       New York, NY 10017
       (212) 889-6565

## VERIFICATION

STATE OF TEXAS        )
                                    ) ss:
COUNTY OF Dallas )

SHARON EDMONDSON, being duly sworn, deposes and says:

1.    I am the Vice President, Global Human Resources, and an authorized signatory for defendant REGUS MANAGEMENT GROUP, LLC, and am fully familiar with the facts in this case.

2.    I have read the annexed Verified Answer, know the contents thereof to be true to my knowledge, except those matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true based upon my personal knowledge and files maintained by my office.

_____
Sharon Edmondson

Sworn to before me this
day of Nov. 18 , 2010

_____
Notary Public

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

NANCY SCHAAFF, being duly sworn deposes and says:

That she is not a party to this action is over 18 years of age and resides in Kings County.

On the 22nd day of November, 2010 the annexed **VERIFIED ANSWER** was served upon the attorney(s) and/or persons whose name(s) and address (es) are set forth below, by enclosing a true copy thereof in a securely sealed U.S. Postal Service Express Mail envelope, and/or container, with proper postage, at the address (es) designated by him (or them) for that purpose, by depositing the same in an official  box of the U.S. Post Office regularly maintained by the United States Government and by mailing Regular Mail.

To:    Murray Schwartz
       SCHWARTZ & PERRY
       Attorneys for Plaintiff
       295 Madison Ave.
       New York, New York  10017
       (212) 889-6565

                                    _____
                                    NANCY SCHAAFF

Sworn to before me this
22nd day of November, 2010

_____
NOTARY PUBLIC

                    MICHAEL V. CIBELLA
              Notary Public, State of New York
                     No.02HI5047161
                 Qualifed in New York County
                Commission Expires July 31, 20_13_

Index No.    114258/10

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ALBERT WILLIAMS,

Plaintiff,

-vs-

REGUS MANAGEMENT GROUP, LLC.,

Defendant.

**VERIFIED ANSWER**

Signature (Rule 130-1.1-a)    Michael V. Cibella

Print name beneath

**LAW OFFICES OF
MICHAEL V. CIBELLA, LLC**

Attorney for    Defendant

Office and Post Office Address
546 Fifth Avenue
New York, New York 10036
(212) 818-1880

Service of a copy of the within
is hereby admitted.
Dated,

Attorneys for

---

NOTICE OF ENTRY

Sir:  Please take notice that the within is a

(certified) true copy of a
duly entered in the office of the Clerk of the
within named court on                   20

Dated,

Yours, etc.

**LAW OFFICES OF
MICHAEL V. CIBELLA, LLC**

Attorneys for

Office and Post Office Address
546 FIFTH AVENUE
NEW YORK, NEW YORK 10036
(212) 818-1880

To

Attorneys for

---

NOTICE OF SETTLEMENT

Sir:  Please take notice than an Order

of which the within is a true copy will be
presented for settlement to the
Hon.
one of the Judges of the within named Court,
at
on                   20
at           M.
Dated,

Yours, etc.

**LAW OFFICES OF
MICHAEL V. CIBELLA, LLC**

Attorneys for

Office and Post Office Address
546 FIFTH AVENUE
NEW YORK, NEW YORK 10036
(212) 818-1880

To

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALBERT WILLIAMS,

Plaintiff,

-vs-

REGUS MANAGEMENT GROUP, LLC,

Defendant.

**NOTICE OF REMOVAL OF CIVIL ACTION TO
UNITED STATES DISTRICT COURT**

Signature (Rule 130-1.1-a)

Print name beneath     Michael V. Cibella

**LAW OFFICES OF
MICHAEL V. CIBELLA, LLC**
*Attorney for* Defendant
REGUS MANAGEMENT GROUP, LLC
*Office and Post Office Address*
546 Fifth Avenue
New York, New York 10036
(212) 818-1880

*Attorneys for*

Service of a copy of the within
is hereby admitted.
Dated,

*Attorneys for*

---

_____ NOTICE OF ENTRY _____

Sir: Please take notice that the within is a

( certified ) true copy of a
duly entered in the office of the Clerk of the

within named court on                    20

Dated,

Yours, etc.

**LAW OFFICES OF
MICHAEL V. CIBELLA, LLC**
*Attorneys for*
*Office and Post Office Address*
546 FIFTH AVENUE
NEW YORK, NEW YORK 10036
(212) 818-1880

To
_____ NOTICE OF SETTLEMENT _____
*Attorneys for*

Sir: Please take notice than an Order

of which the within is a true copy will be
presented for settlement to the
Hon.

one of the Judges of the within named Court,
at
on
at                    M.                    20
Dated,

Yours, etc.
**LAW OFFICES OF
MICHAEL V. CIBELLA, LLC**
*Attorneys for*
*Office and Post Office Address*
546 FIFTH AVENUE
NEW YORK, NEW YORK 10036
(212) 818-1880

To
*Attorneys for*